Filed 5/12/22  In re E.V. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. K.V., Defendant and Appellant. | A162654 (Alameda County Super. Ct. No. JD-033175-01) |

Following a jurisdiction and disposition hearing, the juvenile court sustained "risk of harm" allegations (Welf. & Inst. Code, § 300, subd. (b)(1)),[1] as to K.V. (Father) and mother.  Father appeals, challenging a jurisdiction finding that his "daily" consumption of alcohol placed E.V. (minor) at "serious risk of physical harm or neglect," which precipitated an alcohol assessment requirement and removal of the minor from his custody.  Although the jurisdiction and disposition orders are supported by other, unchallenged

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

findings,[2] we exercise our discretion to consider Father's challenge. As we shall explain, what this case boils down to is whether Father's forthright acknowledgment of having a "beer or two" at night after work, in the absence of *any* evidence that this modest consumption impaired his functioning at home or at work, was sufficient basis to find a "serious risk of physical harm or neglect" supporting jurisdiction or clear and convincing evidence of " 'substantial danger to the child's physical health, safety, protection, or physical or emotional well-being' " sufficient to support a removal order. We conclude it is not.

## BACKGROUND

The Alameda County Social Services Agency (Agency) detained one-month-old E.V. after she tested positive for opiates and was twice hospitalized for " 'failure to thrive.' "

In its initial petition, the Agency alleged, pursuant to section 300, subdivision (b)(1) that: parents "were not feeding the minor throughout the night," and such actions placed minor "at serious risk of physical harm" (count b-1); mother's substance abuse placed minor at serious risk of physical harm or neglect (count b-2); and Father's "history of using illegal substances" and his "daily" consumption of alcohol placed minor at serious risk of physical harm or neglect (count b-3).

The detention report recounted that the hospital social worker said E.V. was admitted after her first weight check because she was "severally underweight." The hospital discharged the infant after five days, but she was re-hospitalized three days later because the "pediatrician . . . felt the baby was unsafe to take home due to her weight." The social worker "reported

---

[2] Mother does not appeal.

2

that there are concerns regarding the two admissions to the hospital for a baby being considered 'failure to thrive' and this is highly irregular."

The pediatrician reported E.V.'s failure to thrive diagnosis was the "result of the baby not being fed enough" because she "was doing well in the hospital and has been gaining weight." The doctor stated hospital staff had "struggled with waking" father at night to feed E.V., and that when he is present at the hospital, father "is asleep a majority of the night." The doctor expressed "many concerns around both parents['] capacity to ensure that the baby is being fed."

The social worker reported that Father took "accountability" for not "feeding [E.V.] at night." He stated he works long hours, waking up at 6:00 a.m. and getting home from work around 6:30 p.m. He then takes over care of E.V. at night, starting around 9:30 p.m. He said he "is a heavy sleeper and did not hear his daughter wake up or cry in the middle of the night, which he assumed that meant she was not hungry." Father claimed the doctor told him "he cannot co-sleep with the baby due to potential risk of suffocating the baby and that made it harder for him to hear the baby in the crib."

Father "shared that he has been arrested, has battled heroin abuse in the past, and has participated in therapy in the past" but that he had "come a long way with his sobriety." He denied any current substance abuse, stated it had "been 'a long time' " since he had used any illegal substances but "was not able to provide a timeframe." He "reported that he occasionally drinks alcohol after work," but it "does not impair his ability to care for minor as he only has a couple of beers when he gets home from work."

The court found a prima facie showing had been made and that continuance in the home was "contrary to [E.V.'s] welfare." The court ordered

3

visitation for parents and set the matter for a jurisdiction and disposition hearing.

The jurisdiction/disposition report stated the social worker had spoken with Father, who reported visits with E.V. were going well. When asked what he "felt his needs are" for services and referrals, Father replied that he did "not feel he has additional needs at this time," that he "ha[d] been clean from substances for a long time." He reported that he "will have a beer or two when he gets off work but does not feel he has an issue with alcohol and does not feel it impairs his ability to parent the minor."

Father had been referred to parent education classes and had also been asked to have "an assessment with Family Treatment Court to determine if he needs substance abuse treatment."[3]

The social worker also spoke with mother about Father's past substance abuse. Mother said he "has been going to a methadone clinic for past heroin use." As for Father's consumption of alcohol, mother had, prior to the detention hearing, told the social worker he drank "daily." Prior to the jurisdiction/disposition hearing, she told the social worker he "was drinking about three times a week and on the weekends when he was not working." Mother also told the social worker prior to the detention hearing that she had "confronted" father about his alcohol use.[4] Prior to the jurisdiction/disposition hearing, she said she "does not think that it is a problem." Mother's only suggestion was that Father could "benefit from a parent class."

_____

[3] Specifically, this was a request for an assessment of drug use and abuse.

[4] The report did not elaborate on why mother said she had "confronted" father, i.e., whether it was an economic issue, or a health issue, or an issue of not sufficiently contributing to the care of E.V.

4

The Agency recommended the court find the section 300 allegations true and that mother be offered reunification services. Father, who had not yet been elevated to presumed father, was not entitled to services because he had not yet "establishe[d] a legal basis" for them. At a March 2021 hearing, the court elevated Father to presumed father, granted the Agency discretion to increase visits between E.V. and Father, and continued the matter for the jurisdiction/disposition hearing.

In an addendum jurisdiction/disposition report, the Agency stated Father had completed the substance abuse assessment. The evaluator reported Father was "forthcoming for the most part" about his substance abuse history. He was "honest about his history with using heroin but [the evaluator] was not sure about what he shared about when he stopped using heroin."[5] When asked if he was "a 'dry drunk,'" Father told the evaluator "having a full time job helps keep him out of trouble." He told her he "drinks a 'tall boy' every night and does not have any issues with stopping that." The evaluator reported he "was not resistant to testing," but was "resistant to doing treatment."[6] The evaluator's only specific suggestion was that a class about "criminality and substance use" "might be helpful for . . . father."

In light of the assessment, the Agency submitted a drug testing referral for Father. As of the time the addendum report was prepared, he had not yet drug tested, and the social worker "encouraged him to do so."

---

[5] The quote is accurate, and the addendum report does not explain what the evaluator meant by "not sure about what he shared" when Father stopped using heroin.

[6] The evaluator did not specify whether she was referring to drug testing and treatment or alcohol testing and treatment. Presumably, it was drug testing, given the Agency's subsequent referrals.

The addendum report also stated Father had begun parenting classes. He reported they were "going well but he does not feel it is very beneficial because they usually only talk about teenagers." Father reported visits were "going great," and he was "keeping busy with work."

The social worker stated she was "worried about" the parents' history of substance abuse, that father "denies the need for any services, but admits to a history of heroin use and current alcohol use," and that he "minimizes the reasons the Agency is involved."

The Agency recommended E.V. be returned to mother's care but remain out of the home of Father, and that Father receive informal child welfare services at the Agency's discretion. The Agency stated mother "has come a long way in maintaining her sobriety and while continuing that process, she is able to have the minor at the program with her. She has been caring for the minor overnight on a weekly basis and most recently has the minor for four consecutive nights. It will be important to see what happens next for the mother in her plan to continue her sobriety and live independently when discharged from the program. She has shared she is willing to continue in a sober living environment and follow future Court orders as they pertain to visits, etc. The father will continue to receive visits and will be encouraged to participate in programs that help him personally as a father to the minor. The relationship between the parents is unclear but the mother has made it known that she wants to make sure she put[s] the minor first no matter what."

At the contested jurisdiction and disposition hearing, the Agency submitted on its reports and Father was the sole witness.

Father testified he and mother would "switch off" the responsibility of feeding E.V. and that he was aware the infant had been readmitted to the

hospital for "weight loss." When asked what he had "done to ensure [E.V. is] safe," he replied that he buys her clothes, makes "sure she has what she wants," works every day "to be able to support her and her mom," and goes to parenting classes.[7]

After hearing from Father, the court adopted the Agency's recommendations.

As to the failure to thrive allegation against Father, the court stated there was "direct eyewitness evidence of father sleeping through the feeding of the baby at the hospital. [¶] . . . [¶] So I think that there is evidence that the father did not perform his duties while at the hospital, to feed the baby." Additionally, "circumstantially," through the submitted reports, there was "ample proof that the baby . . . was released to the parents, taken home, lost weight, and that the parents, to wit, the father, didn't have a schedule for feeding the baby, or a plan. [¶] . . . [¶] And, the fact the baby was readmitted again, at such a young and tender age, for failure to thrive, is alarming and concerning to the Court."

The court went on to state, "I don't have evidence that is questionable about father's alcohol use. [¶] Mother had no, from reading the reports, no ax to grind with father, no reason to try to throw him under the bus, saying she wanted to confront him about his alcohol use. [¶] Maybe the alcohol use is why the father slept through the night, and did not care for the child. Maybe mother's substance abuse is one of the factors as well." The court stated, it could "draw an inference that father hasn't gone to Options and participated in any substance abuse assessment.[8] Maybe there is a substance abuse

_____

[7] Neither the Agency, minor's counsel, mother's counsel nor the court asked Father any questions.

[8] However, the record shows Father's initial March 2, 2021, plan included a recommendation that he participate in a substance abuse

7

problem or alcohol problem that renders him unable. Or it could be his work schedule as well, I don't know. I don't have enough evidence. [¶] It could be his working as a truck driver and he is working very long hours and is exhausted, exhaustion can also make a parent sleep through the night. The fact of the matter is that there is sufficient evidence to support [the b-1 count]."

However, the court was "slightly troubled by the [b-3 count], where it says [Father] has a history of using illegal substances." The court observed, "The history of using illegal substances, yes, he did talk about that a little bit, but I'm not sure that's a circumstance of where we stand today." The court therefore struck that portion of the b-3 count. It left the remainder of the count intact, stating it was "supported over all" because father "drinks alcohol daily, period." The court went on to state, "I don't think he needs a substance abuse assessment [for which the Agency had made its referrals]. I do think he needs an alcohol assessment, and that will be the Court's order."

The Agency filed an amended section 300 petition to reflect the court's order. The b-3 count was modified to allege: "The father . . . drinks alcohol daily. [Father] was unable to identify when he last used substances other

---

assessment, and Father completed that assessment on or before March 17. On that date, the Agency submitted a referral for drug testing. On April 29, Father was given new information so he could begin drug testing. In the meantime, the Agency submitted another referral for assessment, this time with Options. The record does not indicate why this second referral was made. The Agency states in its respondent's brief that this referral was also for drug evaluation and testing. The Options evaluator cancelled the first appointment scheduled for April 22. Father missed the second appointment scheduled for April 28, and rescheduled the appointment for May 3. Father apparently did not make the May 3 appointment and there is nothing in the record as to why that was the case.

than alcohol.  Such actions by the father . . . place the minor at serious risk of physical harm or neglect."

**DISCUSSION**

## *Justiciability*

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' "  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762 (*Drake M.*); accord, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*).)

Courts may nevertheless exercise their discretion to reach the merits of an additional jurisdiction finding where it "(1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* [(2009) 171 Cal.App.4th 438,] 454; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 . . .); or (3) 'could have other consequences for [the appellant], beyond jurisdiction' (*In re I.A., supra*, [201 Cal.App.4th] at p. 1493 [not reaching the merits of an appeal where an alleged father 'has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings'])."  (*Drake M., supra*, 211 Cal.App.4th at pp. 762–763.)  Still, "*Drake M.* provides a narrow exception to the general rule that we will not address the merits of challenges to jurisdictional findings that do not affect

9

the child's status as a dependent of the court." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 310.)

The Agency maintains Father's appeal "must be dismissed" since the juvenile court has jurisdiction over E.V. "on the basis of the (b)(1) [failure to thrive] allegations and the unchallenged (b)(2) allegations against Mother."

Father asserts there is a justiciable controversy as to the (b)(3) jurisdiction finding because he is also "challenging the dispositional order" removing E.V. and the b-3 finding is the underpinning of that order. Under these circumstances, we will exercise our discretion to review the juvenile court's (b)(3) jurisdiction finding. (See *Drake M., supra*, 211 Cal.App.4th at p. 763 [exercising discretion to address father's appeal on the merits].)

### B-3 Count

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) The Legislature has declared, "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (*Ibid.*)

More specifically, section 300, subdivision (b)(1), authorizes a juvenile court to assert jurisdiction over a child if the " 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child.' " (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) The burden is on the agency to demonstrate the following three elements by a preponderance of the evidence: "(1) neglectful conduct, failure, or inability by

10

the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*Ibid*.)

The court need not wait until a child is seriously injured or abused to assume jurisdiction. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may also consider past events in deciding whether the child currently needs the court's protection. (*Ibid.*; *In re S.O.* (2002) 103 Cal.App.4th 453, 461 [parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue"].)

However, a parent's drug use, alone, cannot support juvenile court jurisdiction. (*Drake M., supra*, 211 Cal.App.4th at p. 765.) Rather, jurisdiction can only be based on a parent's substance use if it results in a risk of serious physical harm to the child. (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.)

" 'We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.] "However, substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' [Citation.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " ' " (*Drake M., supra*, 211 Cal.App.4th at p. 763, italics omitted.)

11

As we have recited, the amended b-3 count reflecting the court's jurisdiction finding alleges jurisdiction is warranted because Father "drinks alcohol daily. [Father] was unable to identify when he last used substances other than alcohol. Such actions by father . . . , place the minor at serious risk of physical harm or neglect."

Father maintains there is insufficient evidence to support the court's finding that the alleged conduct places his daughter at "serious risk of physical harm or neglect."

The entirety of the Agency's response is a single paragraph stating as follows:

> "Sufficient evidence supports the jurisdictional findings pertaining to Father. Father's use of substances can be abuse if it presents a present risk of harm to E.V. (*See In re Alexis E.*[, *supra*,] 171 Cal.App.4th [438,] 452.) Father admitted that he drank alcohol daily and was unable [to] identify when he last used substances other than alcohol. [Citation.] Father admitted to drinking 'a beer or two' after work, but he contended that his alcohol use did not affect his parenting. [Citation.] Additionally, the Family Treatment Court coordinator was 'not sure about what he shared' regarding when Father stopped using heroin. [Citation.] At the time the juvenile court assumed jurisdiction over E.V., Father had not followed through with drug testing at Options, and the Agency was concerned about Father's sobriety because he had not begun drug testing. [Citation.] Additionally, because E.V. was less than one month old at the time she was detained and only a few months old at the time of the combined jurisdiction and disposition hearing, she can be considered a child of tender years such that the absence of adequate supervision and care poses an inherent risk to her physical health and safety, a finding of substance abuse by a Father is prima facie evidence of the inability of the parent or guardian to provide regular care resulting in a substantial risk of physical harm. (*See Drake M.*[, *supra*,] 211 Cal.App.4th at 767.)"

To the extent this paragraph identifies any evidence, it pertains largely to Father's prior *drug* use (e.g., Father was "unable [to] identify when he last

used substances other than alcohol," "coordinator was 'not sure about what he shared' regarding when Father stopped using heroin," "[a]t the time the juvenile court assumed jurisdiction over E.V., Father had not followed through with drug testing at Options, and the Agency was concerned about Father's sobriety because he had not begun drug testing"). However, the juvenile court did not sustain the b-3 count on the basis of Father's prior drug use. Nor would this have been a proper basis to do so given the lack of any evidence that Father was currently using drugs, let alone any evidence such use posed any risk of harm, let alone a serious risk of harm, to E.V. (See *In re J.A., supra,* 47 Cal.App.5th at p. 1047; *Drake M., supra*, 211 Cal.App.4th at pp. 765–766.)

The *only* evidence the Agency cites pertaining to Father's use of alcohol is Mother's statement to the social worker before the detention hearing that he drank "alcohol daily" and Father's statements and testimony that he drank "a beer or two" after work. The Agency identifies *no* evidence that his drinking a beer or two after work impaired him in any way, let alone, placed E.V. at serious risk of harm. In fact, the only *evidence* as to the effect of the beer was Father's testimony that it did not affect his parenting and mother's statement to the social worker that she did not think Father's beer drinking was "a problem." While the Agency intimates otherwise, it points to *no* evidence that was the case.[9] Moreover, by the time of the addendum jurisdiction and disposition report, Father reported he had stopped consuming even two beers and there is no evidence to the contrary.

---

[9] As we have recited, mother told the social worker at one point that she had "confronted" father about his drinking, but also said she did "not think it [was] a problem." Mother was never asked to elaborate as to why she "confronted" Father. Nor did she testify at the jurisdiction/disposition hearing.

13

Indeed, the court's musings on Father's drinking reflect it was utter speculation that his imbibement of two beers in the evening after work resulted in any impairment of his capabilities, let alone posed a risk of serious risk of harm to E.V. The court pondered, for example, "Maybe the alcohol use is why the father slept through the night, and did not care for the child. Maybe mother's substance abuse is one of the factors as well. [¶] . . . Maybe there is a substance abuse problem or alcohol problem that renders him unable. Or it could be his work schedule as well, I don't know. I don't have enough evidence. [¶] It could be his working as a truck driver and he is working very long hours and is exhausted, exhaustion can also make a parent sleep through the night." The court had it exactly right in this respect—that it did not have enough *evidence* to make a finding, as it did as to the (b)(3) count, that Father's consumption of two beers, alone, placed E.V. at serious risk of physical harm or neglect.

Substance abuse is a " 'maladaptive pattern of substance use leading to clinically significant impairment or distress . . . occurring within a 12-month period.' " (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346 (*Jennifer A.*); *Drake M., supra*, 211 Cal.App.4th at pp. 765–766 [same].) Accordingly, substance use is not substance abuse, and a finding of past or current use of alcohol, for example, will not, alone, support a jurisdiction finding under section 300, subdivision (b), unless such use has a negative impact upon the child or the parent's ability to effectively parent the child. (See *In re Alexis E., supra,* 171 Cal.App.4th at pp. 451–452; *In re David M.* (2005) 134 Cal.App.4th 822, 829–830, abrogated in part on another ground by *In re R.T.* (2017) 3 Cal.5th 622; *Jennifer A.*, at pp. 1345–1346.) Here, there was no such evidence with respect to Father's modest consumption of beer in the evenings after work.

14

***Removal from Father's Custody***

Section 361 allows for removal of a child from the parent's custody at the disposition hearing if the juvenile court finds by clear and convincing evidence (1) of a " 'substantial danger to the child's physical health, safety, protection, or physical or emotional well-being,' " and (2) " 'there are no "reasonable means" by which the child can be protected without removal.' " (*In re Henry V.* (2004) 119 Cal.App.4th 522, 528 (*Henry V.*); § 361, subd. (c)(1).) " 'Clear and convincing' evidence requires a high probability. The evidence must be so clear as to leave no substantial doubt." (*In re David C.* (1984) 152 Cal.App.3d 1189, 1208.) And as to "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home," the court "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"The elevated burden of proof for removal from the home . . . reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. (See *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288 . . . ; see also *In Henry V.*[, *supra*,] 119 Cal.App.4th 522, 525. . . .) By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' (*In re Jasmine G., supra*, at p. 290.) Removal 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent.' (*In re Henry V., supra*, at p. 525.)" (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.)

" 'On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' " (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

Since we have concluded there is no substantial evidence to support even a jurisdictional finding under the b-3 count, there is, perforce, no clear and convincing evidence that can support a dispositional finding removing E.V. from Father's custody under section 361. For all the reasons we have discussed, there is not clear and convincing evidence that Father's drinking two beers in the evening after work threatened the "physical health, safety, protection, or physical or emotional well-being" of E.V. Nor is there any clear and convincing evidence that " 'there are no "reasonable means" by which the child can be protected without removal.' " (*Henry V., supra*, 119 Cal.App.4th at p. 528.) Indeed, by the time of the jurisdiction/disposition hearing, the *evidence* in the record is that Father had stopped having even one or two beers in the evening and that E.V. was thriving. It is also notable that the Agency never even made a referral for an alcohol assessment or asked Father to test for alcohol. Rather, the Agency's focus was on Father's continued drug sobriety.

Given that the b-3 count allegations and evidence cannot support the disposition removal order, that leaves the b-1 count allegations and evidence as the only potential basis for the order. But this count was alleged against mother, as well as Father, and the Agency never claimed the alleged conduct and evidence pertinent thereto was sufficient to support a section 361 removal order from mother. If, as the Agency implicitly recognized, these allegations and the supporting evidence cannot support a removal order against mother, they certainly cannot support a removal order as to Father.

In fact, the evidence as to mother was far more concerning in terms of E.V.'s well-being, than the evidence as to Father. While Father had obtained and maintained drug sobriety for a number of years, mother had not. The child was born with opiates in her system. And while the Agency reported mother "has come a long way in maintaining her sobriety . . . [i]t will be important to see what happens next for the mother in her plan to continue her sobriety and live independently when discharged from the program. She has shared she is willing to continue in a sober living environment and follow future Court orders as they pertain to visits, etc." In short, while mother had made significant efforts to address her addiction, she did not yet have the sustained period of recovery that Father had. Yet, the Agency urged, and the court ordered, that E.V. be returned to mother's care. Additionally, by the time of the jurisdiction and disposition hearing, E.V. was doing well. Father had been attending parenting classes and visits were going well. In sum, there was no evidence, let alone clear and convincing evidence, that could support a finding that E.V., if returned to both parents' care, was at substantial risk of serious harm.

### Alcohol Assessment

Father additionally contends the juvenile court abused its discretion in ordering him "to participate in an alcohol assessment."

Section 362, subdivision (d) provides in pertinent part: "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section. . . . That order may include a direction to participate in a counseling or education program. . . . The *program in which a parent or guardian is required to participate shall be*

17

*designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."* (Italics added.)

Under this statutory provision, " '[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.' " (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.) On appeal, " 'this determination cannot be reversed absent a clear abuse of discretion' " (*ibid.*), and we will not disturb the juvenile court's decision unless the court " ' " 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456.)

As we have recounted, the Agency never made a referral for an alcohol assessment. Rather, the referrals it made was for drug assessments and testing. Nor did the Agency urge at the jurisdiction and disposition hearing that Father be assessed and tested for alcohol. Rather, at the end of the hearing, in conjunction with its count b-3 finding, the juvenile court ordered such an assessment and testing.

However, as we have discussed above, there was no evidence to support the court's count b-3 jurisdictional finding—there was, in other words, no substantial evidence that Father's consumption of one or two beers in the evening after work placed E.V. at "serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W., supra,* 32 Cal.App.5th at p. 848.) And given our reversal of the b-3 jurisdictional finding, the juvenile court's order that Father participate in an alcohol assessment cannot be said to be reasonably designed to eliminate the condition that led to the court's count b-3 finding that E.V. was a person described in section 300. (See *Drake M., supra,* 211 Cal.App.4th at pp. 770–

18

771 [reversing order requiring the father to participate in drug counseling because nothing in record indicated father had a substance abuse problem].)[10]

## DISPOSITION

The jurisdiction order is reversed as to the finding pertaining to K.V.'s conduct alleged in the b-3 count of the Section 300 petition. The disposition order is reversed to the extent it removes E.V. from K.V.'s physical custody and orders K.V. to participate in an alcohol assessment. The matter is remanded for a new disposition hearing for the purpose of considering placement of E.V. with K.V. The juvenile court is not precluded from considering new evidence or changed circumstances that may have arisen during the pendency of this appeal. In all other respects, the jurisdiction and disposition orders are affirmed.

---

[10] We note that should the Agency in the future become aware of evidence that consumption of alcohol by Father does, in fact, impair his ability to parent E.V., it can take appropriate steps in the juvenile court to obtain a referral for an alcohol assessment.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.